UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TASHA BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 4921 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| DR. JOHN SANTANIELLO, METHODIST | ) | |
| HOSPITAL NORTH LAKE E.R. DOCTOR, | ) | |
| METHODIST HOSPITAL NORTH LAKE E.R. | ) | |
| NURSE, and METHODIST NORTH LAKE E.R. | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendants. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Tasha Banks filed this diversity suit against John Santaniello—a doctor at Loyola University Medical Center who attended to her daughter, Letajonique Larry—alleging that he terminated Larry's life support without justification and without Banks's consent. Doc. 18. After Santaniello moved to dismiss Banks's original complaint under Federal Rule of Civil Procedure 12(b)(6), Doc. 15, Banks used her one amendment as of right under Rule 15(a)(1)(B) in lieu of responding, Docs. 18, 21. Santaniello again moves to dismiss. Doc. 25. The motion is granted, though Banks will be given one final opportunity to replead.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set

1

forth in Banks's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Banks as those materials allow. *See Pierce v. Zoetis*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Banks's complaint is short on detail, but the court—aided by her opposition brief—can piece together the following allegations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed … .") (internal quotation marks omitted); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("[P]ro se pleadings are held to less exacting standards than those prepared by counsel and are to be liberally construed."). On April 29, 2014, Larry was taken to the Emergency Room of Methodist Hospital Northlake in Gary, Indiana, with unspecified injuries to the left side of her face and the back of her head. Doc. 18 at 5; Doc. 36 at 6. Larry underwent surgery at Methodist. Doc. 18 at 5. After her treatment at Methodist proved unsuccessful, Larry was airlifted to Loyola University Medical Center in Maywood, Illinois. *Ibid.*; Doc. 36 at 6.

Santaniello was charged with caring for Larry at Loyola. *Ibid.* At some point after Larry's arrival, Santaniello determined that she was "braindead," Doc. 36 at 17, and informed Banks that the ventilator that was keeping her breathing should be disconnected, Doc. 18 at 5, Doc. 36 at 9. On Larry's second day at Loyola, without Banks's consent and over her repeated objections, Santaniello carried out his decision to disconnect the ventilator, allegedly laughing as he did so. Doc. 18 at 5; Doc. 36 at 10. According to Banks, this was unwarranted; Santaniello

"unplugged the ventilator when he should not have." Doc. 18 at 5; *see also* Doc. 36 at 14, 17. Banks also questions whether Larry was truly braindead. Doc. 36 at 17.

After Larry's ventilator was shut off, members of the hospital staff had Banks escorted from the hospital premises. Doc. 18 at 5. Banks has experienced continuous heartache from the time of her daughter's death to the present. *Ibid*.

## Discussion

Santaniello's motion urges dismissal on four separate grounds. Doc. 25. It suffices to discuss just one of them: Santaniello contends, correctly, that Banks has failed to comply with Illinois's requirement, set forth in 735 ILCS 5/2-622, that medical malpractice plaintiffs attach to their complaints either (a) an affidavit from a health professional with relevant experience averring that he or she has reviewed the record and that the suit is well founded, or (b) an affidavit stating that the plaintiff was unable, for either of the two reasons set forth in the statute, to obtain such an affidavit. Banks attached no such affidavit to her original complaint, and although Santaniello moved to dismiss that complaint for failure to comply with Section 2-622, Doc. 15 at 3-4, Banks did not attach any affidavit to her amended complaint either.

Section 2-622 states in relevant part:

> (a) In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:
>
> 1. That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious

> cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. …
>
> 2. That the affiant was unable to obtain a consultation required by paragraph 1 because a statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. …
>
> 3. That a request has been made by the plaintiff or his attorney for examination and copying of records pursuant to [735 ILCS 5/8-2001 *et seq.*] and the party required to comply under those Sections has failed to produce such records within 60 days of the receipt of the request. …

735 ILCS 5/2-622 (footnote omitted). Under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), Section 2-622 is substantive, not procedural, law, and so must be enforced by federal courts exercising diversity jurisdiction over a state law claim. *See Hahn v. Walsh*, 762 F.3d 617, 633 (7th Cir. 2014) ("[S]ection 2-622 may be applied in diversity cases without running afoul of either Rule 8 or Rule 11. Therefore, the district court properly dismissed the plaintiffs' wrongful death claim against HPL because the plaintiffs had failed to attach the required affidavit and report."); *see also Ramirez v. Fahim*, 653 F. App'x 845, 847 (7th Cir. 2016); *Sherrod v. Lingle*, 223 F.3d 605, 613-14 (7th Cir. 2000).

The only remaining question is whether, in the words of Section 2-622, Banks's suit in fact alleges "medical, hospital, or other healing art malpractice." Banks does not allege that any attempt Santaniello made to heal Larry caused her death; to the contrary, she alleges that he *withdrew* lifesaving care from her. But Illinois law defines "medical, hospital, or other healing art malpractice" broadly, and looks to three factors to determine whether a claim is covered by Section 2-622: "(1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiffs' case." *Jackson v. Chicago Classic Janitorial & Cleaning Serv., Inc.*, 823 N.E.2d 1055, 1058 (Ill. App. 2005); *see also Dyer v. Carle*

*Found. Hosp.*, 2015 WL 708873, at *4 (Ill. App. Feb. 17, 2015) (same). Here, all three factors weigh in favor of applying Section 2-622 to Banks's suit.

Beginning with the second prong: when, whether, and how to administer life-saving measures or otherwise provide care are inherently matters of medical judgment, as is the question of what equipment to use when doing so. *See Jackson*, 823 N.E.2d at 1060 (finding that the second factor weighed in favor of applying Section 2-622 to a suit challenging "decisions based on [the defendant's] experience and training as to how much pain [the plaintiff] could safely tolerate, what level of physical exercise was safe to determine [the plaintiff]'s vocational ability and the limits of [the plaintiff]'s physical abilities"); *Lyon v. Hasbro Indus., Inc.*, 509 N.E.2d 702, 706 (Ill. App. 1987) (applying Section 6-622 to "allegations of negligence in providing adequate equipment," explaining that "[t]he determination of which equipment is necessary and precautionary to meet a person in plaintiff's condition's needs [was] inherently one of medical judgment"). As to the third factor, the type of evidence that will be necessary to prove Banks's case, Santaniello argues:

> An expert will be required to testify as to the medical, anatomical, and physiological principles underlying the decedent's condition, her symptoms, complaints, illnesses, and diagnoses. An expert will also be needed to testify regarding the medical definitions, facts, and principles influencing a physician's decision to terminate life support, including, but not limited to, brain death, persistent vegetative state, and 'do not resuscitate' orders.

Doc. 28 at 4. Given that convincing submission, which Banks does not dispute, the third factor weighs in favor of finding this to be a medical malpractice suit. (Indeed, Banks's opposition brief implies that she will litigate the issue of whether Larry was in fact braindead, Doc. 36 at 17, confirming Santaniello's need for such evidence.) The first factor—whether the standard of care is within a lay juror's grasp—weighs in Santaniello's favor for similar reasons, because understanding Larry's condition at the time life support was withdrawn will require at least some

5

degree of specialized medical knowledge. *See Jackson*, 823 N.E.2d at 1059 (holding that "where determining the standard of care requires applying distinctively medical knowledge or principles, however basic, the plaintiff must comply with section 2-622").

It follows that Banks's suit sounds in healing arts malpractice and therefore requires a Section 2-622 affidavit, which she did not provide. The suit is dismissed on that ground. Although Banks already had an opportunity, after Santaniello's first motion to dismiss, to amend her complaint by attaching a Section 2-622 affidavit, the dismissal is without prejudice; if Banks wishes to do so, she may attempt to amend one more time, this time making sure to comply with Section 2-622. *See Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (noting that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed") (alteration in original). Banks's principal argument in opposition to the present motion was that no Section 2-622 affidavit was required, Doc. 36 at 16, 18, and that is wrong. But Banks's opposition brief also asserted that she "has not received any of [Santaniello's] medical reports or medical reports from [Loyola]." Doc. 36 at 15. This is potentially significant, as Section 2-622 may be satisfied by an affidavit stating "[t]hat a request has been made by the plaintiff … for examination and copying of records pursuant to [735 ILCS 5/8-2001 *et seq*.] and the party required to comply under those Sections has failed to produce such records within 60 days of the receipt of the request." 735 ILCS 5/2-622(a); *see also* 735 ILCS 5/8-2001 (setting forth requirements and procedures for obtaining medical records from health care facilities and practitioners). Perhaps Banks's situation might fit the bill—though whether that is so remains unclear, given that the opposition brief offers only a bare, unsworn assertion that Banks has not been given Larry's records. Leave to amend is therefore

appropriate. *See Runnion*, 786 F.3d at 519-20 ("Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").

Two loose ends remain. First, Banks's opposition brief cites to 42 U.S.C. § 1983 and the United States Constitution. Doc. 36 at 21-24. To the extent Banks seeks to assert constitutional claims against Santaniello, dismissal is appropriate on the ground that the complaint does not plausibly allege that Santaniello—a physician at a private hospital—was a state actor or otherwise acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) (defining "under color of law" for the purposes of § 1983 as "exercis[ing] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law") (internal quotation marks omitted).

Second, the caption of Banks's complaint names as defendants several unnamed employees of Methodist. But the body of the complaint does not provide any plausible basis for bringing a claim against any of them, Doc. 18, nor have any of them been identified or served, and so dismissal of any claims against those purported defendants is appropriate as well. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *Williams v. Cnty. of Cook*, 969 F. Supp. 2d 1068, 1080 (N.D. Ill. 2013) (dismissing claims against defendants who were mentioned only in "the case caption" and a "passing reference" in a document attached to the plaintiff's brief opposing dismissal); *Anderson v. City of Chicago*, 90 F. Supp. 2d 926, 929 (N.D. Ill. 1999) (dismissing

claims against a defendant where the plaintiff did not "provide a single allegation about her in the body of his complaint, instead merely naming her in the caption").

**Conclusion**

Banks has no doubt suffered immeasurably in the wake of her daughter's untimely and tragic death. But for the reasons set forth above, Illinois law provides that she may not proceed with a suit against her daughter's health care providers absent a Section 2-622 affidavit. Accordingly, Santaniello's motion to dismiss is granted. The dismissal is without prejudice to Banks's filing a second amended complaint that complies with Section 2-622. Banks has until August 7, 2017 to amend her complaint. If she does not do so, the dismissal will convert automatically to a dismissal with prejudice, and judgment will be entered. If Banks amends her complaint, Santaniello shall answer or otherwise plead by August 21, 2017.

July 10, 2017

_____
United States District Judge